UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| KEITH S. | : | |
|---|---|---|
| | : | |
| v. | : | C.A. No. 17-00503-JJM |
| | : | |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration | : : : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on October 31, 2017 seeking to reverse the Decision of the Commissioner. On July 14, 2018, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security. (ECF Doc. No. 13). On October 15, 2018, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF Doc. No. 19). Plaintiff filed a Reply on November 12, 2018. (ECF Doc. No. 21).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion for Reversal (ECF Doc. No. 13) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 19) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on December 22, 2014 (Tr. 148-154) alleging disability since November 1, 2013. The application was denied initially on December 20, 2014 (Tr. 74-83) and on reconsideration on July 18, 2015. (Tr. 85-96). Plaintiff requested an Administrative Hearing. On June 24, 2016, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 43-72). The ALJ issued an unfavorable decision to Plaintiff on August 19, 2016. (Tr. 26-42). The Appeals Council denied Plaintiff's request for review on August 29, 2017. (Tr. 1-7). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ committed multiple errors warranting remand and also that the Appeals Council was "egregiously mistaken" in its treatment of new medical evidence.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's decision is supported by substantial evidence and must be affirmed. She also denies any error by the Appeals Council in considering new medical evidence.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS,

955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When

a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a

claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §

404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met

this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1.     Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of

a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>  (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>  (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>  (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>  (4) Treatment, other than medication, for relief of pain;
>
>  (5) Functional restrictions; and
>
>  (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony

requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

V. **APPLICATION AND ANALYSIS**

A. **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since November 1, 2013, his alleged disability onset date, through August 19, 2016, the date of his decision. (Tr. 31).  The ALJ noted that Plaintiff performed occasional work as an electrical inspector during this period, but his earnings did not rise to the SGA threshold.  Id.  The ALJ found at Steps 2 and 3 that Plaintiff's cervical/lumbar spine degenerative disc disease was severe, but that it did not meet or medically equal any listed impairment (with specific consideration of Listing 1.04).  (Tr. 31-33).  At Step 2, the ALJ found that Plaintiff had the non-severe impairments of irritable bowel syndrome, right shoulder impingement, sleep apnea, prostatitis, hyperlipidemia, borderline obesity, concussion, headaches, right knee sprain, anxiety disorder, right foot pain and chest pain.  (Tr. 31-32).  The ALJ determined that Plaintiff retained the RFC to perform a limited range of work at the sedentary

and light exertional levels (finding that Plaintiff could stand and walk up to four hours per workday), but was non-exertionally limited to occasional adoption of various postures, avoidance of workplace hazards, occasional overhead reaching bilaterally, and no climbing of ladders/ropes/scaffolds; the ALJ found that Plaintiff required an option to switch between standing and sitting for five minutes per hour. (Tr. 33). At Step 4, the ALJ found that Plaintiff could not return to his past relevant work as an electrician. (Tr. 36). Then, at Step 5, the ALJ relied on the VE's testimony to find that Plaintiff could perform other work as an assembler, inspector, and hand packager, all jobs existing in significant numbers in the national and regional economy. (Tr. 37). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 38).

### B. The Appeals Council Decision

Plaintiff argues that the Appeals Council erred in refusing to remand based upon additional evidence submitted after the ALJ's decision. (Tr. 1-8). He describes this in his Reply Brief as his "most important" argument. (ECF Doc. No. 21 at p. 3).

After receiving the ALJ's unfavorable decision, Plaintiff retained a new attorney to pursue an appeal. In connection with the appeal, Plaintiff's current counsel presented additional treatment records from the Warwick Pain Center. (Exh. 16E). At the time of the ALJ's decision on August 19, 2016, the record contained treatment records from that provider for the period June 5, 2013 to September 25, 2015. (Exh. 14F). At the ALJ hearing on June 24, 2016, Plaintiff's prior counsel advised the ALJ that Plaintiff was still going to the Warwick Pain Center and stated, "I'm not sure if those updated records would be relevant or not but…he still has medical treatment." (Tr. 47).[1]

---

[1] As to the Warwick Pain Center records, Plaintiff's prior counsel stated that "right now we have those you know pretty much accurate through like September, October of last year [2015]." (Tr. 47). He also confirmed the

-12-

The ALJ gave Plaintiff's prior counsel the opportunity to obtain such records and submit them post-hearing pursuant to the so-called Five-day Rule contained in 20 C.F.R. § 405.331. (Tr. 47-48). Plaintiff's prior counsel did not do so.

The Appeals Council considered the "new" records in three temporal groupings. (Tr. 2). First, it noted that a significant portion of the records were already included as part of Exhibit 14F in the Administrative Record that was before the ALJ. Plaintiff does not challenge this conclusion. Second, it noted that a smaller portion post-dated the ALJ's decision and thus did not relate to the period at issue. Plaintiff challenges this conclusion because the records are evidence of "continuing conditions." Finally, it noted that approximately half of the records covering the period November 2, 2015 to July 25, 2016 did not show a "reasonable probability that it would change the outcome of the [ALJ's] decision." Id. Plaintiff challenges this last conclusion as being "egregiously mistaken."

Generally, the discretionary decision of the Appeals Council to deny a request for review of an ALJ's decision is not reviewable. A judicial review under 42 U.S.C. § 405(g) is typically focused on the findings and reasoning of the ALJ, i.e., whether the ALJ's findings are supported by substantial evidence and whether the ALJ properly applied the law. Of course, it makes no sense from an efficiency standpoint for a reviewing court to spend time and resources critiquing the work of the Appeals Council when it has jurisdiction to review the underlying and operative ALJ decision. In other words, reversible error by an ALJ can be remedied by the Court regardless of what the Appeals Council did or did not do.

---

lack of any current "orthopedic treatment." Id. These statements and his decision not to obtain and submit updated records suggests that he did not believe they were necessary or relevant to his client's claim.

The First Circuit has, however, held that review of Appeals Council action may be appropriate in those cases "where new evidence is tendered after the ALJ decision." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). In such cases, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id. This avenue of review has been described as "exceedingly narrow." Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287 (D. Mass. Dec. 22, 2006). Further, the term "egregious" has been interpreted to mean "[e]xtremely or remarkably bad; flagrant." Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting Black's Law Dictionary (7th ed. 1999)).

In Mills, the First Circuit recognized that an Appeals Council denial of a request for review has all the "hallmarks" of an unreviewable, discretionary decision. Mills, 244 F.3d at 5. The Appeals Council is given a great deal of latitude under the regulations and "need not and often does not give reasons" for its decisions. Id. Thus, the First Circuit "assume[d] that the Appeals Council's refusal to review would be effectively unreviewable if no reason were given for the refusal." Id. at p. 6. It did, however, create a narrow exception for review when the Appeals Council "gives an egregiously mistaken ground for [its] action." Id. at p. 5. The First Circuit did not find this result to be a "serious anomaly" because "there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple 'review denied' decisions that the Appeals Council must issue every year." Id. at p. 6.

First, a ruling in Plaintiff's favor on this Appeals Council argument will effectively allow him to end run the requirements for timely submission of evidence. In particular, he would avoid the requirements of the Five-day Rule (20 C.F.R. § 405.331) and the good cause showing necessary for a Sentence Six Remand to consider new evidence. See Walsh v. Colvin, No. 15-00495WES, 2016 WL 8674490, *2 (D.R.I. Aug. 19, 2016). Here, the Warwick Pain Center records in question

pre-date the ALJ's decision[2] and could have been obtained and submitted to the ALJ by Plaintiff's prior counsel. He did not do so. Plaintiff's current counsel did submit them to the Appeals Council and the late-tendered records were considered. Thus, the only remaining issue is whether the Appeals Council's conclusion as to those records was "egregiously mistaken" as Plaintiff claims.

Plaintiff argues that the records in issue contain "clear indicia of a worsening of [his] back pain." (ECF Doc. No. 21 at p. 4). He describes it as "the most important evidence proffered" and challenges the Appeals Council's conclusion that it was not likely to alter the outcome. Id. A review of the records for the relevant period (ECF Doc. No. 13-2 at pp. 11-50) suggests otherwise and does not support an egregious-mistake finding.

The Warwick Pain Center records in issue reflect monthly medication-management appointments with either a physician's assistant or nurse practitioner. They all relate to a history of neck and/or back pain, and reference the presence of headaches. They do not reasonably reflect any material exacerbation of symptoms, and record a fairly stable condition.[3] Finally, they are basically consistent with the records actually considered by the ALJ in Exhibit 14F, and thus it is very unlikely that the ALJ's consideration of those records would result in a different outcome. Plaintiff has absolutely failed to establish that the Appeals Council committed any mistake, egregious or otherwise, in reaching the conclusion that the "new" medical evidence did not "show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

---

[2] In addition, all but one medication-management appointment (July 25, 2016) pre-dated the ALJ hearing.

[3] While the two treatment records that post-date the ALJ's decision do arguably reflect increased neck pain which triggered headaches, the records provide no retrospective opinion and indicate no changes in health condition and "no new complaints." Additionally, all of the records for the period September 2015 through August 2016 indicate in the "review of systems" that Plaintiff consistently reported back pain, neck pain and headache.

**C.    Plaintiff Has Shown No Error in the ALJ's Evaluation of His Irritable Bowel Syndrome**

The ALJ determined at Step 2 that Plaintiff's "gastrointestinal irritable bowel syndrome ("IBS")/gastroesophageal reflux disease ("GERD") only causes intermittent reflux/diarrhea which does not result in any ongoing secondary functional limitations" and thus was a non-severe impairment. (Tr. 31-32).[4] The ALJ also gave "less weight" to the opinion of the state agency consulting physicians who found Plaintiff's gastrointestinal disorders to be severe. (Tr. 78, 91). Dr. Lipski at the initial determination stage noted the presence of chronic diarrhea in her RFC explanation (Tr. 81) and found that Plaintiff "needs prn [as needed] access to toileting facilities." (Tr. 80). Dr. Arcega at the reconsideration stage did not expressly include those findings. (Compare Tr. 80-81 with Tr. 93).

The ALJ did not include any special accommodation for bathroom use in his RFC findings. He accurately noted that the "specific frequency of restroom use is not discussed and/or analyzed by any treating or examining source" and thus "[t]here is no way to objectively quantify the frequency or duration of restroom use." (Tr. 32, n.2). The ALJ concluded that "this vague limitation would not significantly reduce the occupational base of exertionally light work." Id.

Plaintiff clarifies in his Reply Brief that the "point" of his Step 2 and 3 arguments is that the ALJ was not equipped as a lay person to determine that there were no ongoing secondary functional limitations arising out of his IBS. (ECF Doc. No. 21 at p. 13). He argues that the ALJ,

---

[4] Plaintiff makes a similar argument regarding the ALJ's Step 2 determination that his headaches were "non-severe" impairments. He fails, however, to sufficiently develop and support this argument and refers only generally to complaints of headaches in the treatment records. (ECF Doc. No. 13-1 at p. 26). The mere presence of such complaints in the record does not evidence functional limitations sufficient to meet Plaintiff's Step 2 burden or show any Step 2 error by the ALJ.

having identified a deficiency in the medical evidence, should have sought clarification from a medical expert as to the frequency of Plaintiff's likely need for restroom use. Id. at pp. 13-14.

In her Memorandum, the Commissioner outlines the medical evidence that corroborates the ALJ's findings. Plaintiff does not dispute this evidence in his Reply Brief but rather, as noted above, argues that the "deficiency" in the evidence warranted engaging a medical expert for clarification. The medical evidence of record does not support Plaintiff's arguments and, even if the ALJ erred in any fashion, it was harmless error.

First, Plaintiff testified at length before the ALJ and never mentioned chronic diarrhea or frequent bathroom usage as a limitation even under questioning by his prior counsel. (Tr. 48-69). Plaintiff's prior counsel asked him questions about numerous functional limitations including walking, standing, sitting, his right shoulder, neck rotation, bending, stopping, crouching, kneeling, lifting, ability to concentrate and medication side effects but posed no questions or argument about frequent bathroom needs. (Tr. 65-67). In addition, the ALJ did not pose any hypothetical to the VE that included limitations for frequent bathroom use, and Plaintiff's prior counsel chose not to ask the VE any questions whatsoever regarding the impact of such limitations on the occupational base. (Tr. 70-71).

The medical record is also silent as to any specific functional limitations related to Plaintiff's IBS.[5] (See Exhs. 10F and 12F). Plaintiff saw a gastroenterologist briefly in 2014 and reported various abdominal symptoms present for his "entire life" but worse with stress or if he eats in morning "maybe." (Tr. 406, 408). Thus, these symptoms were present during the duration of Plaintiff's work as an electrician and later as a part-time inspector. Dr. Palumbo noted a need

---

[5] While Plaintiff reported the need to be "close" to restroom facilities due to digestive issues, (Tr. 197, 207, 223), there is no specific indication as to frequency noted anywhere in the record.

for "lots of diet education" and prescribed an IBS diet (Tr. 418-420). Plaintiff was directed to follow-up as needed (Tr. 420), and there are no follow-up appointments evidenced in the medical record. Finally, the subsequent Warwick Pain Center treatment record for pain medication management all record a denial of complaints of diarrhea or bowel incontinence. (See, e.g., Tr. 438). Plaintiff simply did not meet his Step 2 burden before the ALJ of showing that his IBS caused any significant functional limitations. The ALJ's Step 2 finding that Plaintiff's IBS was "non-severe" is supported by substantial evidence and must be affirmed. However, even if the ALJ erred at Step 2, he thoroughly considered IBS, and the record supports the ALJ's decision not to include any limitation related to frequent bathroom use in his RFC finding. Plaintiff has shown no reversible error.

4. **Plaintiff Has Shown No Error in the ALJ's Credibility Determination**

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms was "not entirely consistent" with the medical and other evidence of record. (Tr. 34). However, the ALJ substantially credits Plaintiff's statements by assessing an RFC for a fairly limited range of work at the sedentary and light exertional levels. (Tr. 33).

The ALJ follows the appropriate legal framework (SSR 16-3p) and clearly articulates the reasons for his conclusion. (Tr. 34-35). While reasonable minds might differ as to the evaluation of such evidence, the assessment of a claimant's credibility is an essential part of an ALJ's responsibility. See Ward v. Colvin, No. 2:14-cv-00323-JAW, 2015 WL 4628846, *4 (D. Me. Aug. 3, 2015) ("The Court is not to substitute its judgment for the judgment of the ALJ, particularly as to the ALJ's credibility determinations."). The ALJ gave adequate reasons to support his findings including an entry in the Warwick Pain Center records that Plaintiff's medication "reduces his pain and allows him to complete his daily work and home activities," (Tr. 546), it has

"significantly reduced [his] pain…with no significant side effects," (Tr. 538), allowed him to "work side jobs during the day with fair pain control," (Tr. 539), his record of working as an electrical inspector during the relevant period, and his reported activities. This evidence and the medical record are more than enough to support the ALJ's credibility findings.

In apparent recognition of this fact, Plaintiff shifts gears in his Reply Brief and argues that "stale state agency opinions cannot be the basis for discrediting a claimant's descriptions of impairment arising out of pain, when they are based on an incomplete record." (ECF Doc. No. 21 at pp. 10-11). However, there is no basis for concluding that the consulting physician opinions are stale or the record incomplete. As previously noted, Plaintiff's prior counsel had the opportunity to obtain and submit the "new" Warwick Pain Center records in issue and failed to do so. In addition, those medication-management records as a whole do not indicate any material worsening of symptoms and record a fairly stable condition.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion for Reversal (ECF Doc. No. 13) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 19) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 17, 2018